**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Maria Hernandez, on behalf of herself and )    No. CV-12-731-PHX-SMM
all others similarly situated,                          )
                                                              )
                      Plaintiff,                          )
                                                              )
vs.                                                         )    **MEMORANDUM OF DECISION**
                                                              )            **AND ORDER**
Williams, Zinman & Parham, P.C.,           )
                                                              )
                      Defendant.                        )
_____)

Pending before the Court are Plaintiff's and Defendant's cross-motions for summary judgment. (Docs. 45, 49.) The motions are fully briefed. (Docs. 46, 48-51, 55-59.) After due consideration, the Court will deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment.

## BACKGROUND

Plaintiff Maria Hernandez ("Hernandez") filed a complaint against Defendant Williams Zinman & Parham, P.C. ("WZP"), a law firm, after WZP sent her a debt collection letter. (Doc. 1.) In her complaint, she alleged that WZP's December 29, 2011, debt collection letter (the "letter") violated the Fair Debt Collection Practices Act ("FDCPA") because the letter did not properly advise her that in order to dispute the debt, she would need to do so in writing. (Doc. 1, Doc. 48-2 at 2.)

Under the FDCPA, in the initial communication, or within five days thereafter, a debt collector must make the disclosures set forth 15 U.S.C. § 1692g(a), also known as a "debt validation notice." See Voris v. Resurgent Capital Servs., L.P., 494 F. Supp.2d 1156, 1169,

(S.D. Cal. 2007); see 15 U.S.C. § 1692g(a). Specifically, the FDCPA provides as follows:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
>> (1) the amount of the debt;
>>
>> (2) the name of the creditor to whom the debt is owed;
>>
>> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>>
>> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>>
>> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

In its December 29, 2011, letter, WZP sought to collect a debt on behalf of a third-party creditor, namely Thunderbird Collection Specialists, Inc. ("Thunderbird"). (Id.) The December 29, 2011, letter lists the original creditor as A-L Financial Corp. (Id.) The alleged debt related to Hernandez's car loan for personal, family, or household use. (Doc 48-3 at 3-5.)

WZP's December 29, 2011, letter was its initial communication with Hernandez regarding the debt purportedly owed to A-L Financial Corp. and then Thunderbird. (Doc. 48-1 at 42.) WZP's December 29, 2011, letter contains the following notice:

> You, the consumer, have thirty (30) days after receipt of this notice to dispute the validity of the debt, or any portion thereof. Unless you dispute the validity of this debt within thirty (30) days, the debt will be assumed to be valid by this firm. If you do notify us of a dispute, we will obtain verification of the debt, or a copy of a judgment, and mail it to you. Also, upon your request within thirty (30) days, we will provide you with the name and address of the original creditor, if different from the current creditor. . . .This communication is from a debt collector. This communication is an attempt to collect a debt for the Creditor and any information obtained as a result thereof will be used for that

1  purpose.

2  (Doc. 48-2 at 2.)

3      Prior to WZP's involvement,  Thunderbird had attempted (unsuccessfully) to collect

4  the money owed by Hernandez.  (Doc. 46-3 at 2-15.)  Specifically, on March 3, 2011,

5  Thunderbird sent an initial debt communication letter to Hernandez at her home address,

6  which included notice of her rights under the FDCPA. (Id.) The March 3, 2011 Thunderbird

7  letter to Hernandez stated:

8      If you notify this office in writing within 30 days from receiving this notice,
       that you dispute the validity of this debt, we will provide verification by mail,
9      if requested, [and] we will provide you with the original creditor if different
       from the current creditor.
10
   (Doc. 46-3 at 14.)
11
12      Subsequently, Hernandez filed a lawsuit in this District's Tucson Division regarding

13  Thunderbird's improper debt collection efforts.  (Doc. 56-1 at 2-24.)  However, in this

14  lawsuit, Hernandez did not assert a claim regarding any omission or inadequacy of

    Thunderbird's § 1692g(a) debt validation notice. (Id.)
15
                          **STANDARD OF REVIEW**
16
17      I. Summary Judgment

18      A court must grant summary judgment if the pleadings and supporting documents,

19  viewed in the light most favorable to the nonmoving party, "show that there is no genuine

20  issue as to any material fact and that the moving party is entitled to judgment as a matter of

21  law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

22  Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive law

23  determines which facts are material.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248

24  (1986); see also Jesinger, 24 F.3d at 1130.  "Only disputes over facts that might affect the

25  outcome of the suit under the governing law will properly preclude the entry of summary

26  judgment."  Anderson, 477 U.S. at 248.  The dispute must also be genuine, that is, the

27  evidence must be "such that a reasonable jury could return a verdict for the nonmoving

28  party."  Id.; see Jesinger, 24 F.3d at 1130.

1   A principal purpose of summary judgment is "to isolate and dispose of factually
2   unsupported claims." Celotex, 477 U.S. at 323-24.  Summary judgment is appropriate
3   against a party who "fails to make a showing sufficient to establish the existence of an
4   element essential to that party's case, and on which that party will bear the burden of proof
5   at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir.
6   1994).  The moving party need not disprove matters on which the opponent has the burden
7   of proof of trial.  See Celotex, 477 U.S. at 323-24.  The party opposing summary judgment
8   need not produce evidence "in a form that would be admissible at trial in order to avoid
9   summary judgment." Id. at 324.  However, the nonmovant may not rest upon the mere
10  allegations or denials of the party's pleadings, but must set forth specific facts showing that
11  there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co.,
12  Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint
13  Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

14        II.  FDCPA

15        The FDCPA was designed to protect consumers who have been victimized by
16  unscrupulous debt collectors, regardless of whether a valid debt actually exists. See Baker
17  v. G.C. Servs. Corp., 677 F.2d 775, 777 (9th Cir. 1982).  The FDCPA defines "debt
18  collector" as "any person who . . . in any business the principal purpose of which is the
19  collection of any debts, or who regularly collects or attempts to collect, directly or indirectly,
20  debts owed or due or asserted to be owed or due another . . ." 15 U.S.C. § 1692a(6).

21        The FDCPA comprehensively regulates the conduct of debt collectors, imposing
22  affirmative obligations and broadly prohibiting abusive practices. See, e.g., 15 U.S.C. §§
23  1692b (governing the acquisition of location information), 1692e (prohibiting misleading or
24  deceptive practices).  The FDCPA does not ordinarily require proof of intentional violation,
25  and is a strict liability statute.  See McCollough v. Johnson, Rodenburg & Lauinger, LLC,
26  637 F.3d 939, 948 (9th Cir. 2011).

27        The Ninth Circuit has recognized there may be vicarious liability under the FDCPA.
28  See Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507, 1516 (9th Cir. 1994). "Under general

1   principles of agency—which form the basis of vicarious liability under the FDCPA—to be
2   liable for the actions of another, the principal must exercise control over the conduct or
3   activities of the agent." Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162,
4   1173 (9th Cir. 2006) (further citation omitted).

5                                    **DISCUSSION**

6          Under the FDCPA, the debt collector's initial communication with the consumer must
7   provide the disclosures set forth in 15 U.S.C. § 1692g(a). See Voris v. Resurgent Capital
8   Servs., L.P., 494 F. Supp.2d 1156, 1169, 2007 (S.D. Cal. 2007).  These disclosures are
9   otherwise known as a "debt validation notice."  Id.  The purpose of the debt validation notice
10  is to inform a debtor of her rights and obligations to the creditor. See Oppong v. First Union
11  Mortg., 566 F. Supp.2d 395, 400 (E.D. Pa. 2008).

12         Hernandez argues that pursuant to §§ 1692g(a)(4) and (5), a debt collector must
13  provide the debt validation notice to the consumer in its initial communication, or within five
14  days thereafter.  (Doc. 49.)  Hernandez further argues that WZP's December 29, 2011 debt
15  collection letter to her did not meet the statutory requirements.  (Id.)  Consequently, because
16  the FDCPA is a strict liability statute, she is entitled to summary judgment.  (Id.)

17         WZP contends that Hernandez's complaint rests entirely upon her false assumption
18  that WZP's letter must comply with the FDCPA as a debt validation notice pursuant to 15
19  U.S.C. § 1692g(a).   However, because its letter to Hernandez was not the "initial
20  communication" with a consumer in respect to the debt in issue, WZP contends that its letter
21  did not need to comply with the FDCPA as a debt validation notice.  Therefore, WZP also
22  moves for summary judgment.

23         Hernandez replies that courts are divided as to whether both the initial debt collector
24  and each subsequent debt collector must comply with § 1692g(a) and provide a debt
25  validation notice in their initial communication with a consumer. (Doc. 51 at 1.) Hernandez
26  thus concedes that it is for this Court to determine whether WZP–as a subsequent debt
27  collector–had to provide a debt validation notice in its initial communication with her in
28  order to comply with the FDCPA.

1      As a matter of law, the Court finds that 15 U.S.C. § 1692g(a)'s statutory requirements

2  do not apply to WZP's letter because it was not the initial communication that Hernandez

3  received on the alleged debt.  Under the FDCPA, it is "the" initial communication with the

4  consumer that triggers the mandatory debt validation notice requirements.  See 15 U.S.C. §

5  1692g(a) ("Within five days after *the* initial communication with a consumer in connection

6  with the collection of any debt, a debt collector shall, unless the following information is

7  contained in the initial communication or the consumer has paid the debt, send the consumer

8  a written notice containing [certain listed requirements]. . . ") (emphasis added).

9      The preeminent canon of statutory construction requires that this Court "presume that

10  the legislature says in a statute what it means and means in a statute what it says there."

11  Bedroc Limited, LLC v. United States, 541 U.S. 176, 183 (2004) (internal quotations

12  omitted).  This Court's obligation is to apply the statute as Congress wrote it. See Hubbard

13  v. United States, 514 U.S. 695, 703 (1995).  Here, the Court finds persuasive the statutory

14  construction reasoning stated by the court in Paris v. Steinberg & Steinberg, 828 F. Supp.2d

15  1212, 1222 (W.D. Wash. 2011).  The Paris court found that "[b]y using the singular when

16  referring to 'initial communication', Congress contemplated only one *initial* communication

17  with a debtor on a given debt." Id. (further citation omitted) (emphasis added).  The Paris

18  court continued:

19      Had Congress intended that there might be more than one initial
       communication with a debtor on a given date, Congress could have said it.
20      Under [the FDCPA] § 1692e(11), for example, Congress explicitly required
       both initial and successive debt collectors to provide validation notices. 15
21      U.S.C. § 1692e(11) (distinguishing between initial communications and
       "subsequent communications").

22  Id.  Thus, in drafting the FDCPA, Congress knew well when to identify both initial and

23  
24  subsequent communications to a debtor on a given debt and when not to.  Id. (citing 15

25  U.S.C. § 1692e(11)).[1]

26      _____

27      [1]15 U.S.C. § 1692e(11) provides:
       The failure to disclose in the *initial written communication* with the consumer
28      . . . that the debt collector is attempting to collect a debt and that any
       information obtained will be used for that purpose, and the failure to disclose

1    The Court also finds persuasive that other courts considering this same issue have
2  followed the same or similar reasoning as set forth in Paris. See McNall v. Credit Bureau of
3  Josephine Cty., 689 F. Supp.2d 1265, 1269 (D. Or. 2010) (stating that "a subsequent debt
4  collector is not required to provide additional notice and another thirty-day validation period
5  after a validation notice has been timely sent to the debtor."); Oppong v. First Union Mortg.,
6  566 F. Supp.2d 395, 403–04 (E.D. Pa. 2008), aff'd, 326 Fed. Appx. 663 (3rd Cir. 2009)
7  (finding that subsequent debt collector not obligated to provide "second" validation notice);
8  Senftle v. Landau, 390 F. Supp.2d 463, 473 (D. Md. 2005) (holding that there is only one
9  "initial communication" with a debtor on a given debt under § 1692g(a), even though
10 subsequent debt collectors "may enter the picture."); see also Nichols v. Byrd, 435 F.
11 Supp.2d 1101, 1106–07 (D. Nev. 2006) (adopting the reasoning set forth in Senftle); Ditty
12 v. CheckRite, 973 F. Supp. 1320, 1329 (D. Utah 1997) (stating that after the initial validation
13 notice has been sent to the consumer, the FDCPA does not require subsequent debt collector
14 to provide additional notice and another 30-day validation period).[2]

15    Finally, it is undisputed that Thunderbird was the initial debt collector.  As such,
16 Thunderbird was responsible for providing Hernandez with the initial debt validation notice
17 that met the FDCPA's statutory notice requirements, 15 U.S.C. § 1692g(a).  Evidence of
18 record is clear that Thunderbird sent Hernandez the initial debt communication letter.

19    Therefore, the Court will grant WZP's motion for summary judgment.  As a matter
20 of law, WZP's letter to Hernandez was not required to meet the FDCPA's statutory notice
21 requirements and thus WZP cannot be held liable, even assuming that the contents of its

---

in *subsequent communications* that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

Id. (emphasis added).

[2]Unpublished decisions also support the position that a subsequent debt collector need not send a separate debt validation notice. E.g. Waters v. J.C. Christensen & Assocs., No. CV 08-11795, 2011 WL 1344452 at *10-11 (D. Mass. March 4, 2011); Goray v. Unifund CCR Partners, No. CV 06-214, 2007 WL 4260017 at *8 (D. Haw. Dec. 4, 2007).

1  letter did not satisfy the FDCPA's statutory notice requirements.

2      Hernandez objects arguing that a subsequent debt collector must be required to meet

3  the FDCPA's statutory notice requirements for a variety of reasons. In support, she relies

4  on statutory construction of the FDCPA citing: 1) the guidance of other courts that would

5  require subsequent debt collectors to also provide a debt validation notice; 2) the guidance

6  of the Federal Trade Commission ("FTC") Staff Commentaries; and 3) real world problems

7  if the Court adopts WZP's position. Finally, she argues that deficiencies in the initial debt

8  validation notice from Thunderbird prevent WZP from becoming a subsequent debt collector.

9      *Contrary Authority*

10      The Ninth Circuit has yet to resolve whether a subsequent debt collector must also

11  provide the same initial debt validation notice to the consumer under the FDCPA. Hernandez

12  cites contrary authority in support of her position that subsequent debt collectors must also

13  submit the required debt validation notice. (Doc. 51 at 4-6.[3]) These courts have found §

14  1692g(a) ambiguous and then gone further to conclude that the purposes of the FDCPA

15  requires a statutory interpretation providing consumers with more disclosures not fewer, that

16  the statute has a goal of eliminating abusive debt collection practices, and that the overall

17  purpose of protecting consumers is best promoted by interpreting "initial communication"

18  as encompassing both prior and subsequent debt collectors for the same debt. (Id.)

19      The Court disagrees with contrary opinion that § 1692g(a) is ambiguous; the statute

20  references one initial validation notice and one thirty-day period for the consumer to

21  challenge the debt in writing. This Court's obligation is to apply the statute as Congress

22  wrote it. See Hubbard, 514 U.S. at 703. As previously stated, in drafting the FDCPA, see 15

23

24      [3]Hernandez cites Stair ex rel. Smith v. Thomas & Cook, 254 F.R.D. 191, 196 (D.N.J.

25  2008); Francis v. Snyder, 389 F. Supp.2d 1034, 1040 (N.D. Ill. 2005) and unpublished decisions, among others, in Robinson v. Nationstar Mortg. & NSM Recovery Servs., LLC,

26  No. CV 12-718, 2012 WL 5596421, at *4-5 (S.D. Ohio Nov. 15, 2012); Turner v.

27  Shenandoah Legal Grp, P.C., No. CV 06-45, 2006 WL 1685698, at *10-11 (E.D. Va. June 12, 2006); Tipping-Lipshie v. Riddle, No. CV 99-4646, 2000 WL 33963916, at *3

28  (E.D.N.Y. Mar. 2, 2000).

1  U.S.C. § 1692e(11), Congress knew well when to identify both initial and subsequent

2  communications to a debtor on a given debt and when not to.  Under 15 U.S.C. § 1692g(a),

3  the consumer is only entitled to one debt validation notice.  Thus, the cited contrary authority

4  is unpersuasive.

5        *Staff Commentaries*

6        Hernandez contends that the FTC, in its Official Staff Commentary, urged that "an

7  attorney who regularly attempts to collect debts by means other than litigation, such as

8  writing the consumer demand letters . . . must provide the required notice, even if a previous

9  debt collector (or creditor) has given such a notice." (Doc. 51 at 6, (citing FTC Official Staff

10  Commentary on FDCPA, 53 Fed. Reg. 50097, 50108 (Dec. 13, 1988), at § 809(a), 7).)

11        Previously, Congress had delegated to the FTC certain duties and responsibilities

12  under the FDCPA, including enforcement and reporting to Congress.  See Jeter v. Credit

13  Bureau, Inc., 760 F.2d 1168, 1172-75 (11th Cir. 1985).  However, effective July 21, 2011,

14  Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act transferred the

15  authority of the FTC for the FDCPA to the Bureau of Consumer Financial Protection.  See

16  Pub. L. No. 111-203, § 1089, 124 Stat. 1376, 2092-93 (2010).

17        In Heintz v. Jenkins, 514 U.S. 296, 298 (1995), the Supreme Court specifically

18  recognized that the FTC's staff commentary was non-binding.  Furthermore, the Introduction

19  to the FTC Staff Commentary expressly clarifies that the "Commentary should be used in

20  conjunction with the statute . . . and is not intended as a substitute for the statutory text" and

21  that the "Commentary should be not considered as a reflection of all court rulings under the

22  FDCPA."  See FTC, "Statements of General Policy or Interpretation," Staff Commentary on

23  the FDCPA, 53 Fed.Reg. 50097, 50102 (Dec. 13, 1988).

24        The FTC Staff Commentary at issue does not address the subsequent case law on this

25  issue, and the Court does not find it persuasive.  Congress's chosen language is the clearest

26  indication of its intent. See F.B.I. v. Abramson, 456 U.S. 615, 644 (1982) ("Absent

27  compelling evidence requiring a contrary conclusion, the best indication of Congress' intent

28  is Congress' own language.") (O'Connor, J., dissenting).

1    *Real World Problems*

2    Next, Hernandez presents a number of hypothetical factual situations to demonstrate

3    why excusing subsequent debt collectors from providing validation notices pursuant to §

4    1692g(a) would create real world problems. (Doc. 51 at 8-12.)

5    The Court rejects Hernandez's invitation to consider the impact of her hypothetical

6    situations. The judicial power of federal courts is limited to "cases" or "controversies." U.S.

7    Const., Art. III, sec. 2. "[T]he federal courts established pursuant to Article III of the

8    Constitution do not render advisory opinions." Golden v. Zwickler, 394 U.S. 103, 108

9    (1969). Thus, a federal court's "role is neither to issue advisory opinions nor to declare rights

10   in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers

11   granted the judiciary in Article III of the Constitution." Thomas v. Anchorage Equal Rights

12   Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000).

13   *Thunderbird's Validation Notice*

14   Hernandez contends that even if the Court determines that the FDCPA does not

15   require a subsequent debt collector to provide a debt validation notice, the initial validation

16   notice from Thunderbird was deficient and consequently WZP remained as the one providing

17   the initial debt communication. (Doc. 51 at 12-16.) In support, Hernandez first argues that

18   she did not receive Thunderbird's debt validation notice. (Id. at 12-14.) Next, she argues

19   that Thunderbird's validation notice failed to satisfy the statutory requirements, 15 U.S.C. §

20   1692g(a)(5). (Id. at 14-16.)

21   It is undisputed that Hernandez incurred a debt and that Thunderbird sought to collect

22   it. (Doc. 46-3 at 2-15.) WZP argues that as a debt collector, Thunderbird sent out its

23   purported debt validation notice to Hernandez. (Id.)

24   Hernandez disputes this fact, stating that the evidence does not establish that

25   Thunderbird sent her the purported debt validation notice. (Doc. 51 at 12.) Hernandez

26   further testifies that even if the notice was allegedly mailed to her by Thunderbird, she did

27   not receive it. (Doc. 50-1 at 2.) Absent receipt of Thunderbird's notice, she contends that

28   WZP was an initial debt collector obligated to provide her with a proper debt validation

1    notice.  (Doc. 51 at 12-14.)

2          In the initial debt communication, a debt collector is obligated to send a proper debt

3    validation notice to the consumer.  See 15 U.S.C. § 1692g(a).  However, in Mahon v. Credit

4    Bureau of Placer Cnty., Inc., 171 F.3d 1197, 1201 (9th Cir. 1999), the Ninth Circuit held that

5    the plain language of the FDCPA only requires a debt collector to send the consumer a debt

6    validation notice, there was no additional requirement that it confirm that its notice was

7    opened or otherwise received.  "[A] debt collector . . . shall *send* the consumer a written

8    notice . . ."  15 U.S.C. § 1692g(a) (emphasis added).  Nowhere does the statute require

9    receipt of the notice.  Id. at 1201.  The Ninth Circuit further reasoned that because the

10   language of the statute is plain, there was no need to consider extrinsic evidence to interpret

11   its meaning.  Id.

12         Thus, it remains for the Court to resolve whether or not Thunderbird sent a debt

13   validation notice to Hernandez.  The Court finds that no reasonable juror could conclude

14   anything but that Thunderbird's official documents, as testified to by Thunderbird's

15   custodian of records, establish that it mailed (sent) Hernandez the debt validation notice on

16   March 3, 2011.  (Doc. 46-3 at 2-15.)[4]  Therefore, WZP was a subsequent, not an initial debt

17   collector.

18         Next, Hernandez argues that even assuming that Thunderbird did send her a debt

19   validation notice, Thunderbird's notice failed to satisfy the statutory requirements, 15

20   U.S.C. § 1692g(a)(5).  (Doc. 51 at 14-16.)  Hernandez argues that being provided with a

21   proper debt validation notice by the initial debt collector is a condition precedent for

22   excusing the subsequent debt collector from doing so.  (Doc. 59 at 8.)  Consequently,

23   Hernandez asserts that she is still entitled to summary judgment.

24         WZP contends that the initial debt collector's provision of a proper debt validation

25

26   [4]WZP subpoenaed these documents from Thunderbird and they were disclosed to
     Hernandez before the close of discovery.  (Doc. 56-3 at 2-24.)  Although the Thunderbird
27   subpoena and the corresponding records were inadvertently not sent to Hernandez initially,
     they were subsequently provided to her.  (Id.)  The Court finds no prejudice to Hernandez
28   from the initial oversight; she received the documents prior to the close of discovery.

1    notice is not a condition precedent for excusing the subsequent debt collector from doing so

2    because the subsequent debt collector is not responsible for the content of the initial debt

3    collector's debt validation notice.  (Doc. 55 at 2.)

4          The Court agrees with WZP that under agency principles it is not responsible for what

5    Thunderbird included in its debt validation notice.  In order to be liable for the actions of

6    another, the principal must exercise control over the conduct or activities of the agent.  See

7    Clark, 460 F.3d at 1173.  It is undisputed that prior to WZP's involvement, Thunderbird

8    attempted to collect the debt owed by Hernandez.  (Doc. 56-1 at 2-24; Doc. 46-3 at 2-15.)

9    As part of Thunderbird's attempt to collect the debt, it sent a debt validation notice to

10   Hernandez.  (Doc. 46-3 at 2-15.)  It is further undisputed that Hernandez, through retained

11   counsel, filed suit against Thunderbird regarding its actions in attempting to collect the debt.

12   (Doc. 56-1 at 2-24.)  Although she could have, Hernandez chose not to allege a cause of

13   action against Thunderbird for a possible statutory violation of § 1692g(a). (Id.)  Under these

14   circumstances and under principles of agency liability, the Court will not hold WZP

15   responsible for the content of Thunderbird's March 3, 2011 debt validation notice to

16   Hernandez.  See Weinstein v. Fink, No. CV 99-C7222, 2001 WL 185194  at *7-8 (N.D. Ill

17   2001) (stating that the subsequent debt collector is not responsible for the content of letters

18   forwarded to the consumer by the initial debt collector); see also Clark, 460 F.3d at 1173.

19   Despite the fact that Thunderbird subsequently retained WZP to collect the debt owed by

20   Hernandez, WZP was not under retainer when Thunderbird initially sent Hernandez its debt

21   validation notice.  (Doc. 46-1; 46-2.)

22         Regardless of her prior litigation with Thunderbird, Hernandez maintains that other

23   courts have required the provision of a proper debt validation notice by the initial debt

24   collector as a condition precedent for excusing the subsequent debt collector from providing

25   one.  (Doc. 59 at 8, (citing McNall v. Credit Bureau of Josephine Cty., 689 F. Supp.2d 1265,

26   1269-70 (D. Or. 2010).)

27         The Court finds that Hernandez has interpreted McNall too broadly.  In the context

28   of denying a motion to amend as futile because a subsequent debt collector need not provide

1  a debt validation notice, the <u>McNall</u> court did remark that the initial debt collector's letter
2  included the statutory language required by § 1692g(a). <u>McNall</u>, 689 F. Supp.2d at 1269-70.
3  However, the court did not hold that its findings regarding the subsequent debt collector were
4  conditioned upon its findings that the initial debt collector had provided a proper debt
5  validation notice. <u>McNall</u> cannot be stretched this far.

6        Thus, the Court finds that a subsequent debt collector is not responsible for the content
7  of the initial debt collector's debt validation notice. If the initial debt validation notice
8  contains an alleged statutory violation of the FDCPA, it is up to the plaintiff to hold the
9  initial debt collector responsible.

10         *Leave to Amend*

11        Hernandez contends that if the Court finds that a subsequent debt collector is not
12 required to provide a proper debt validation notice, the Court should grant her leave to amend
13 her complaint to argue that WZP's letter violated two other provisions of the FDCPA, §§
14 1692e(10) and 1692f. (Doc. 51 at 16.)

15        After the district court has filed a pretrial case management order pursuant to Federal
16 Rule of Civil Procedure 16 that establishes a timetable for amending pleadings, Rule 16
17 standards control any modification. <u>See</u> <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d
18 604, 607-08 (9th Cir. 1992). The case management schedule shall not be modified except
19 by leave of court upon a showing of good cause. Fed. R. Civ. P. 16(b)(4). If the party is able
20 to establish good cause for amendment, the party must also demonstrate that amendment is
21 proper under Rule 15. <u>See</u> <u>Johnson</u>, 975 F.2d at 608. Under Rule 15, although leave to
22 amend "shall be freely given when justice so requires," it "is not to be granted
23 automatically." <u>Zivkovic v. Southern California Edison Co.</u>, 302 F.3d 1080, 1087 (9th Cir.
24 2002). The district court may deny a motion for leave to amend if permitting an amendment
25 would, among other things, cause an undue delay in the litigation or prejudice the opposing
26 party. <u>See</u> <u>Jackson</u>, 902 F.2d at 1387; <u>see also</u> <u>Solomon v. North Am. Life & Cas. Ins. Co.</u>,
27 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming the district court's denial of motion to amend
28 pleadings filed on the eve of the discovery deadline).

1    The Court will deny leave to amend as untimely as it will cause an undue delay in

2    concluding the litigation of this case.  The deadline for the amendment of pleadings, October

3    12, 2012, has long passed.  (See Doc. 19.)  A motion for leave to amend is not a vehicle to

4    circumvent summary judgment. See M/V American Queen v. San Diego Marine Constr.

5    Corp., 708 F.2d 1483, 1492 (9th Cir. 1983).  In these circumstances, the combination of

6    delay, the timing of the motion, and in light of this Court granting WZP's motion for

7    summary judgment, the Court will not grant Hernandez leave to file a motion to amend her

8    complaint.

9                                              **CONCLUSION**

10    Accordingly, on the basis of the foregoing,

11    **IT IS HEREBY ORDERED** denying Plaintiff's motion for summary judgment.

12    (Doc. 49.)

13    **IT IS FURTHER ORDERED** granting Defendant's motion for summary judgment.

14    (Doc. 45.)  The Clerk of Court is directed to enter judgment for Defendant and to terminate

15    this case.

16    DATED this 12th day of March, 2014.

17

18    _____

19    Stephen M. McNamee
      Senior United States District Judge

20

21

22

23

24

25

26

27

28

- 14 -